Next case is number 06-7314, Nelson. It's the Department of Veterans Affairs. Good morning. I'm Paul Eaglin from Fairbanks, Alaska, and thank you very much for hearing Mr. Nelson's case. We are here today because the Court of Appeals for Veterans Claims ruled that Mr. Nelson's tardy filing of his appeal by 23 days, beyond the 120-day filing deadline, could not be excused under the doctrine of equitable tolling, at least with respect to the point that we are putting before the Court today. I advocated on this behalf that the Court should consider looking not to Irwin v. the Secretary in terms of judging tardiness and precluding one's appeal, if tardy, but instead should look to Pioneer Investment Services Company, a U.S. Supreme Court case that followed Irwin by a couple of years, that addressed specifically conduct on the part of an attorney that was very clearly negligent. Is there any case that has followed Pioneer where there wasn't a rule or statute that specifically included the excusable neglect standard? I'm not aware of one, Judge Dike, but my approach would be this. As you point out, Pioneer follows a rule or a statute. PIN-K, and of course Pioneer came out of the bankruptcy context, and PIN-K looked to the rules of civil procedure and other rules or statutes. What I would suggest to the Court and what I'd ask the Court to consider is that if you look at the combination of Bailey v. West, which found with respect to the Court's rules and the statute, of course, in which the Court of Appeals to Veterans Claims rules are based, if you look to Bailey v. West, it remarked that simply because a statute or a rule does not specifically provide for a certain circumstance, equitable tolling, for example, or excusable neglect, that should not necessarily preclude the argument. Well, but the problem is that Irwin said specifically, it says equitable tolling does not quote, extend to what is at best a card-provided claim of excusable neglect. So I draw from that that Irwin is telling us that the excusable neglect standard does not fall under equitable tolling, does not justify equitable tolling. Is there some other way of reading that one? One of the ways that I would read it is this, that also in Pioneer, the Court remarked that what excusable neglect would be, I believe that's at Pioneer 395, 507-395, because Congress did not provide guideposts for determining what sorts of neglect would be considered quote, excusable, unquote. We conclude that the determination is an equitable one at bottom, which is why in return to Bailey, which I read to be a case that in the veteran's context put forward a standard of application of equitable principles to whether tolling should be permitted or not. I certainly think that you're correct that it is a significant consideration that Pioneer, that line of authority comes out of statutes, rules, and so forth. But I believe that Bailey, combined with the language of Pioneer concerning whether Congress has provided guideposts for what is excusable, that Bailey provides a sufficient vehicle for you to determine that in the application of the Court of Appeals for Veterans Claims, the authority, its equitable authority, as other colored courts have. Are you suggesting that the entire Pioneer test should come under equitable tolling in the veterans' context? In other words, that anything that would qualify as excusable neglect under Pioneer would create equitable tolling in the veterans' context? Are you saying standalone apart from Irwin? In other words, that Pioneer should supplant Irwin? Well, not that it should supplant, but that anything that would be excusable under Pioneer should be excusable under the veterans' context. If it has to do with, first, yes, I'm saying that if it has to do with the type of conduct on the part of an attorney that we have here. Well, I'm not clear whether you're saying that this type of conduct should come under it or whether all the conduct that would constitute excusable neglect under Pioneer should come under excusable neglect. Well, the reason I would come under equitable tolling in this context. Okay. The reason I was uncertain is because I was trying to think of all the different circumstances of the different types of cases that there have been, and I couldn't immediately do the analysis on all of those under Pioneer. And that's why I was trying to limit it just to the circumstance that I had here in suggesting that this type of attorney conduct should be regarded as excusable neglect. What I'm trying to get at is, are you saying that anything that would qualify as excusable neglect under Pioneer justifies equitable tolling in the veterans' context? Or are you saying there's something special about the conduct in this particular case that should be excusable? I think that it should, the former, Your Honor, that the excusable neglect should be analyzed under that analysis. I do also believe that Equitable tolling should exist whenever there's excusable neglect under Pioneer. Yes, sir. And I also believe that in this circumstance, this particular type of conduct, certainly what should constitute excusable neglect, that should justify consideration of equitable tolling. Because it would constitute excusable neglect under Pioneer. Yes, sir. And that, therefore, once you reach that point, then the Pioneer analysis, the four-point Pioneer analysis, should be conducted to determine. And I think in this particular case, as often is the case under Pioneer analysis, it would come down most often, as here, to the reason for the delay and whether it was in the reasonable control of the party. As you know, the veterans' court faulted Mr. Nelson. He's not trying to avoid any responsibility that is his. But I think that if one were to look at the circumstances, the reasons that the veterans' court relied on to fault Mr. Nelson, I would disagree with, of course, but I think that, for example, when they suggest that one in his shoes should have simply fired the attorney who was representing him at the time and should have hired somebody else. Well, that is very easy to say, and it certainly appears attractive, but I think when you stand back from that, that's a very sophisticated consumer choice to make in any circumstance, whether it's firing your lawyer, hiring another one, firing your doctor, hiring another one, firing your surgeon, hiring another one. It's a very sophisticated thing. I believe that what Mr. Nelson did in this circumstance is understandable and should be recognized as the conduct of a reasonable person under the circumstances. He was only 23 days late. The lawyer who had, according to the record here, who had apparently dismissed his concerns, ultimately did in fact file his appeal for him. At the same time, the record indicates that he was indicating some uncertainty, doubt, whether he was in fact the attorney. But the bottom line is he is the attorney who filed the appeal for Mr. Nelson, although he did so late once he realized that the deadline had been missed. Okay, let's hear from the other side. Thank you, Your Honor. Mr. Rodriguez. Good morning, may it please the Court. I think it's clear that this one was supposed to pass the lawyer, says Jan, within the 120-day period. Don't worry, I filed your notice of appeal. Everything's taken care of. And the lawyer's lying. Is there equitable tolling under those circumstances? Our position is that there would not be equitable tolling under those circumstances. This Court's holdings in Bailey v. West. So no matter how egregious the lawyer's conduct, there's no equitable tolling? Not in the jurisprudence of this Court. Now, the Veterans Court, under another analysis of extraordinary circumstances, looked at the conduct, and their conclusion is that under certain circumstances beyond the control of the individual and under these extraordinary circumstances where you have lies or something like that, that it would possibly apply. But you don't have that in this case. Does the government agree with the extraordinary circumstances doctrine? I think that perhaps there are cases where some sort of extraordinary circumstances beyond the control of the veteran, such as in one case it was discussed, I believe it was a hurricane, a hurricane struck. But there the question becomes, was it the same? But where the lawyer lies to the time, says it was filed. If the lawyer had said that it had been filed, and in fact it had not been filed, our position is that still it would not apply, but that's not the question. The extraordinary circumstances doctrine wouldn't apply under those circumstances? No, I don't think it would. But in any case, this court has specifically dealt with the issue of attorney misconduct, though not in the context of the same statute. But in Gilbert v. the Secretary of Health and Human Services, the late filing of the Court of Federal Claims was not excused because of attorney negligence. Assuming that equitable polling had applied in that case, the court would not apply it. Even in the situation where... But that wasn't in a veteran's case, right? And it might very well have been in Gilbert. It could have gone to some other court. But let's concentrate on whether there should be some sort of less rigorous, less strict approach. In these particular circumstances, considering the statutory obligations, to consider the interest of veterans, to consider that this veteran himself was diligent. He apparently kept pestering his lawyer. What about my case? Your position is that because our precedent has, on Bailey and other facts, said there's no equitable tolling, there's no equitable tolling, or as a matter of policy, there's no equitable tolling available to veterans, unless it's something so egregious that it shocks the conscience. The court, this court, has been very careful in extending where equitable tolling applies. Bailey, you know, it later was extended to include beyond the mere fact where... There's basically two circumstances where equitable tolling would apply, where not through the diligence of the individual, and has somehow been tricked or duped by their opponent, which is the same in Commonwealth. Not the case here. But this court has concluded that that's not the only times when it was applied. And, in fact, it has applied equitable tolling in cases dealing with mental health, in Barrett v. Principi. Yes, we have applied it, and I think all courts are concerned, lest being too loose with the deadlines would result in an unmanageable judicial situation. But let's talk about this case, this particular case, because on the facts of the case, this veteran did his best. We don't know. He may have paid the lawyer in advance. He may have had all sorts of difficulties, even if it crossed his mind that he wasn't being that well represented. The veteran's court below, in its findings, concluded that Mr. Nelson knew what was going on, questioned his attorney about the filing deadlines, and, in fact, didn't believe that his attorney was handling it properly. So, while he was inquiring, and while he was trying to ascertain what was going on in his case, at that point he became passive and did nothing further, did not seek other counsel. He could have filed a notice of appeal himself, under rules, Why is this so significantly different from having said it to the wrong address? Because in all those cases, Your Honor, there was a filing. It was filed to the wrong office, it was filed to the regional office, or it was filed to... Well, I'm talking about the equitable aspects. And the courts are seeking a just result in unfortunate circumstances. Isn't that the concern of the government, the concern of the VA, in considering its relationship with the veterans? At the veteran's court, it is an adversarial system, with rules that have to be followed. The applicant, Mr. Nelson, could have filed a notice of appeal, which under Rule 3, only asks for a name, an address, a telephone number, the case number, and a reasonably identifiable decision from which he's appealing. That's all he would have had to do. File it at the wrong place, or... Perhaps he didn't know that. Perhaps that would have been entrusted to his lawyer. Then his lawyer was negligent. But that doesn't mean that... Let's accept that the lawyer was negligent. That's really what we're talking about, isn't it? When the lawyer is negligent, how much does the client suffer? In this case, the lawyer's negligence, the client did suffer. But again, this court's jurisprudence has specifically stated, under Irwin, and this court then decided, Bailey v. West, that garden variety neglect does not apply to equitably toll the time period. And while the results are unfortunate in this case, to allow, as Mr. Nelson suggests, to embrace the neglect of the attorney as an additional basis to toll the 120-day clock would be basically to incarcerate the time period to have no effect at all. Now, here the veteran did contact his lawyer several times. Is this whose neglect are we talking about? The client's neglect or the lawyer's neglect? When you talk about garden variety neglect. In the context of neglect, both parties were neglectful in this case. It's our position that, again, the veteran could have chosen additional counsel, could have filed a notice themselves. I mean, these are the facts that the law was applied to below. You have to say he should have in order to eliminate equitable considerations. Don't you? Say he should have done other things. He could have done other things, right. No, he could have. He could have gotten another lawyer. He didn't. The question is, did he have such notice of the faults of his lawyer who kept reassuring him that he should, nevertheless, have done something else? The veteran's court below found that Mr. Nelson was aware that the filing deadline was coming up, consulted his lawyer, did not believe his lawyer. His lawyers, I suppose, assurances that these time rules didn't matter. Yet at that point, he came past it and took no further action. Mr. Nelson, to what extent do you rely on the proposition, if you do, that someone is bound by the conduct of their attorney? The Supreme Court has stated in Irwin that, and in other cases, that an individual is bound by the conduct of their attorney. That was stated in Irwin. Yes, I believe it was. But in Irwin, it was acting for children, wasn't it? The facts in Irwin were different, because in that case, the paperwork had been filed. The court said there was no equitable tolling in that case. I'm sorry. The court in Irwin said there was no equitable tolling in that case. Right, because in that case, even though the 30-day timetable had been given to the attorney, the attorney was out of town, didn't receive it in time, and was subsequently filed late. In that case, the court did not apply equitable tolling to what was the case of Midlife. Yes, I agree. They, however, left the door open for equitable tolling in appropriate cases. They did. And this court has determined that those appropriate cases are cases where it's filed in the wrong office, mental health, you know, for mental health issues and physical illness, where those maladies directly affect the ability of the veteran to file their case. They don't understand what's going on. They're too physically ill to file the case. None of those cases deal with where a veteran does not file at all. Okay. Any more questions? Thank you, court, for the foregoing reasons, and the reasons I'm briefly asking for. Thank you. Thank you. If I could return to Judge Dyke's question about whether if a lawyer is lying to his client, whether that should fit under extraordinary circumstances. As I said, Appendix 6, the court below addressed that and noted, of course, that it would qualify as fitting within the doctrine of extraordinary circumstances. Here we're putting forth just the problem is that you're not raising the field of extraordinary circumstances. I was just trying to address the question. That's correct. Right. That's correct. I was just trying to get back to the question you had posed earlier. As you consider this, judges, I'd like you to note that in Furman, there is, of course, the two-step approach, whether equitable tolling is generally available to private litigants under circumstances like that, and the second analysis having to do with whether Congress disfavors it. In this circumstance, you can consider possibly Pioneer as standing apart from Irwin, that perhaps the analysis of a number of cases in the past should have been done perhaps under Pioneer, that attorney negligence or attorney misconduct issues in the future should be analyzed under Pioneer in the consideration of equitable tolling, or you might also want to consider whether Pioneer itself, the Pioneer analysis, rather. Mr. Nelson, you can correct me if I'm wrong, but in reading Pioneer, I did not see a citation to Irwin in Pioneer. Please correct me if I'm wrong. That's correct. And that suggests to me that the court in Pioneer did not think that it was in any way altering the Irwin standard, but rather that it was speaking to the particular situation of the bankruptcy rule that was at issue in that case. Judge Schall, I agree that Pioneer did not cite Irwin. It was a puzzle to me. I did not necessarily reach the conclusion that you did. I noticed, for example, that cases that have followed both Irwin and Pioneer have not brought the two together, and it's been a puzzle to me as I've prepared for this case. So I'm not sure what to make of that. I certainly don't say that that's an unreasonable presumption, but I— I'm just saying in many support of what I think Judge Dike, when you were up on the main part of your argument, asked you the question as to whether there were any cases that had found equitable tolling for this type of situation outside the setting— That's where I think you're making the point. Right, right. And I believe, as I said earlier, that after Bailey, that— because Bailey pointed out that even though there is certain language not found in a certain passage, that that does not necessarily preclude the type of equitable tolling that was at issue there. And also, for the record, I appreciate that my colleague has not used the name of the attorney below at the initial level, nor have I. I was not that attorney. I would like to state that for the record. I became involved only on appeal, and I was not the attorney whose conduct is at issue. Speaking of names, I have an apology for you. I addressed you as Mr. Nelson. Oh, I know, but I— No, I apologize. No problem. I just kept—I was looking at the sheet. My apologies. Fine. Thank you. Thank you. The case is taken into submission.